UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE: CARL VICTOR LORENZETTI,

    Debtor,                                                  Case No.: 04-07016-8-JRL

CARL VICTOR LORENZETTI,

    Plaintiff,

v.                                                            Adversary Proceeding No.:
                                                                04-00222-8-JRL

NORTH CAROLINA STATE EDUCATION
ASSISTANCE AUTHORITY,

    Defendant.
_____

## ORDER

        The matter before the court is the complaint of Carl Victor Lorenzetti ("Lorenzetti") against North Carolina State Education Assistance Authority ("NCSEAA") to determine whether Lorenzetti is entitled to a discharge of his student loan debt. On August 18, 2005, the court conducted a trial in Wilmington, North Carolina. Pursuant to Federal Rule of Bankruptcy Procedure 7052, this Order contains findings of fact and conclusions of law based thereon.

## FINDINGS OF FACT

        1.        Lorenzetti is a 55-year-old male who resides in Rocky Point, Pender County, North Carolina with no dependents.

        2.        Lorenzetti suffers from a number of medical conditions, including peripheral neuropathy,

diabetes mellitus, bilateral plantar fasciitis, hypertension, and osteoarthritis.

    3.    Lorenzetti is unable to stand or walk for long intervals of time. He needs a total replacement of his right knee and orthoscopic surgery on his left knee. He has been informed that Medicare will only cover 80% of the cost of surgery, and that he will have to make a deposit up front and pay the remaining 20% of the cost of surgery. The cost of surgery deters Lorenzetti from pursuing this course of action.

    4.    Lorenzetti also suffers from chest pain and shortness of breath. He has been diagnosed as suffering from the early stages of congestive heart failure and pulmonary edema. One physician has advised him to undergo triple bypass surgery. Again, the cost of surgery deters Lorenzetti from pursuing this course of action.

    5.    At trial, the court observed Lorenzetti's breathing difficulties, severe limp, and use of a cane.

    6.    In November 1999, Lorenzetti stopped working as a prop maker in the movie and television industry due to his deteriorating health. He became unable to perform job functions, such as climbing scaffolding ladders. His physician advised him to seek other employment that did not require such physical exertion.

    7.    In June of 2000, Lorenzetti applied for Social Security disability insurance benefits. On September 17, 2001, the Social Security Administration concluded that Lorenzetti had been under a disability since November 19, 1999 and was entitled to a period of disability benefits commencing from that time until December 31, 2005. It further concluded that Lorenzetti's impairments are "severe" and that "[based] upon the claimant's residual functional capacity and vocational factors, there are no jobs existing in significant numbers, which he can perform."

8. Lorenzetti had a high school education and had no transferrable job skills to apply towards a new career. He decided to pursue further education that would enable him to obtain a job better suited for his health condition. From September 2000 through May 2003, Lorenzetti attended Cape Fear Community College in Wilmington, North Carolina. He obtained student loans from College Foundation, Inc., to fund that education. Lorenzetti received an associate degree in applied sciences in the area of information systems technology. He also obtained additional certifications in that area.

9. While attending college, Lorenzetti made interest payments on his student loans. He was able to finance those payments by using student loan money and grant money.

10. Upon obtaining his associate degree in information systems technology, Lorenzetti sent resumes to numerous employers, such as Verizon and Best Buy. While some employers contacted him for a first interview, no one contacted him thereafter. Lorenzetti believes that, during the job application process, his age and physical condition were deterrents.

11. Lorenzetti qualified for a one-year deferment on repayment of his student loans. During that period, he hoped to find gainful employment in his intended field so that he could repay his loans. However, no one hired him. To this day, Lorenzetti has no practical experience in the area of information systems technology.

12. Even if Lorenzetti had been offered a position in the field of information systems technology, his deteriorating health would now prevent him from performing all necessary job functions, such as setting up computer equipment and laying the wiring for computer systems.

13. Lorenzetti also pursued work outside of information systems technology. He contacted the Gogas and Kangaroo stations; however, they both informed him that a job would entail more than sitting

3

at a cash register. He would have to physically move merchandise in the store and take out the trash. Lorenzetti's health condition does not permit such physical activity.

14.     Lorenzetti receives a monthly income of $832.00 in Social Security disability benefits. In December 2004, the Social Security Administration performed another review of Lorenzetti's medical status and determined that he is eligible to continue receiving disability benefits. This is Lorenzetti's sole source of income.

15.     His monthly expenses total $1,037.52. They include $528.52 for the home mortgage, $120.00 for utilities (electric/gas), $90.00 for telephone, $100.00 for medical and dental expenses, $40.00 for transportation, $64.00 for homeowner's insurance, $45.00 for automobile insurance, and $50.00 for recreation and entertainment, which must also include food.

16.     Lorenzetti lives a sedentary lifestyle. He spends the bulk of his time sitting at his home computer. He receives three basic television channels. Lorenzetti drives his vehicle sparingly. Due to the cost of gasoline, he only makes the trip to nearby Wilmington, where his attorney and physicians are located, once or twice a month.

17.     Lorenzetti is indebted to NCSEAA in the approximate amount of $11,761.33.

18.     Based on his progressive health problems and inability to find suitable employment, Lorenzetti does not believe that he will be able to pay the student loan debt.

19.     On cross-examination, counsel for NCSEAA asked Lorenzetti if he was aware of a program at UNC Hospitals in Chapel Hill that might provide financial assistance for his surgeries. It was clear to the court that Lorenzetti was unaware of such program and unaware of his possible eligibility for such program.

20. Counsel for defendant also asked Lorenzetti if he had received forms from the defendant regarding his permanent and total disability status. Lorenzetti said his physician would not sign those forms, as his physician could not attest to Lorenzetti's permanent and total disability when there is the possibility for some improvement through surgery.

21. NCSEAA acts as the guaranty agency for the Federal Family Education Loan Program in North Carolina, and it acquired the debt previously owed to College Foundation, Inc. On January 18, 2005, the court granted NCSEAA's motion to intervene and be substituted as the defendant in this matter.

## **CONCLUSIONS OF LAW**

A debtor's educational loans are not dischargeable in bankruptcy unless such debt "will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Lorenzetti seeks to discharge his student loan on grounds of undue hardship. The Fourth Circuit Court of Appeals has adopted the test for undue hardship set forth in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2d Cir. 1987). Under the Brunner test, to qualify for a discharge based upon undue hardship, the debtor must establish the following factors: (1) that he cannot maintain a minimal standard of living for himself and his dependents, based upon his current income and expenses, if he is required to repay the student loans; (2) that additional circumstances indicate that his inability to do so is likely to exist for a significant portion of the repayment period of the student loans; and (3) that he has made good faith efforts to repay the loans. Ekenasi v. The Education Resources Institute (In re Ekenasi), 325 F.3d 541, 546 (4th Cir. 2003); Brunner, 831 F.2d at 396.

In addressing the first factor, the court must evaluate whether the debtor has maximized his income and minimized his expenses. Perkins v. Pennsylvania Higher Education Assistance Agency (In re Perkins),

318 B.R. 300, 305 (Bankr. M.D.N.C. 2004). The court must be sensitive to the individual circumstances of each case. Id. The court finds that Lorenzetti has maximized his income under the circumstances. After suffering from declining health, Lorenzetti terminated his career as a prop maker in the television and movie industry, as he was no longer able to perform all job functions. He applied for Social Security disability benefits. The Social Security Administration concluded that Lorenzetti had suffered from a disability since November 19, 1999 and that he qualified for disability benefits commencing from that time. In pertinent part, the Social Security Administration stated: "Based upon the claimant's residual functional capacity and vocational factors, there are no jobs existing in significant numbers, which he can perform." In addition to applying for Social Security disability benefits, Lorenzetti made an effort to find gainful employment by pursuing a degree in information systems technology—a field that he believed would better accommodate his health condition. Upon receiving his degree and relevant certifications, he pursued jobs by sending out resumes to employers and by participating in the interview process. Despite his efforts, he was unable to secure employment in the field of information systems technology. He also sought work outside of his intended field by discussing job possibilities with area Gogas and Kangaroo stations; however, employment with either entity would have required physical activity that Lorenzetti could not perform with his health condition. The record supports that, while suffering from multiple health impairments, Lorenzetti made significant efforts to find potential sources of income.

      The court also finds that Lorenzetti has minimized his expenses. Lorenzetti makes a conscious effort to live a frugal lifestyle. He spends the bulk of his time sitting at his computer. He receives three basic television channels. Aware of the soaring price of gasoline, Lorenzetti drives his vehicle sparingly, only taking necessary trips to nearby Wilmington once or twice a month. The debtor's monthly expenses set

6

forth in his schedule total $1,037.52. They include the following basic expenses: $528.52 for the home mortgage, $120.00 for utilities (electric/gas), $90.00 for telephone, $100.00 for medical and dental expenses, $40.00 for transportation, $64.00 for homeowner's insurance, $45.00 for automobile insurance, and $50.00 for recreation and entertainment, which also must include food. It is clear that, despite his efforts to maximize his income and minimize his expenses, Lorenzetti's monthly expenses significantly outpace his monthly income of $832.00. The court concludes that Lorenzetti cannot maintain a minimal standard of living based upon his current income and expenses if he is required to repay his student loans.

The court now looks at the second factor—whether additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan. Examples of "additional circumstances" are "medical problems, lack of usable job skills or severely limited education." Perkins, 318 B.R. at 310. In Ekanasi, the Fourth Circuit emphasized that, when dealing with a Chapter 7 case, the second factor of the Brunner test is based upon a "known, current situation." Ekenasi, 325 F.3d at 547. The court, therefore, will consider Lorenzetti's current situation and take into account relevant factors, such as his medical impairments, lack of usable job skills, and education. The most significant factor here is his health condition. The court notes that it is not a requirement of the Brunner test for a debtor to suffer a permanent and total disability. When awarding disability benefits to Lorenzetti, the Social Security Administration concluded that Lorenzetti has "severe" impairments. The record reflects that Lorenzetti, who is now 55-years-old, suffers from peripheral neuropathy, diabetes mellitus, bilateral plantar fasciitis, hypertension, and osteoarthritis. He is unable to stand or walk for long intervals of time, and he needs a total replacement of his right knee and orthoscopic surgery on his left knee. Lorenzetti also suffers from chest pain and shortness of breath, and he has been diagnosed with the early stages of congestive

7

heart failure and pulmonary edema. This debtor suffers from a number of serious ailments, such that if one condition was potentially treated, there would be another equally debilitating problem in its wake. Based on a review of the medical records and testimony provided at trial, surgical treatment–while plausible for some of his medical ailments--would not relieve this man of all significant health problems that he endures.

As for job skills, Lorenzetti's practical experience is limited to prop making, and he is no longer able to perform that type of activity. Lorenzetti has been unsuccessful finding employment in information systems technology, and it is unlikely for that to change. Lorenzetti has no practical experience in that field. He is 55-years-old, and his declining health eliminates his ability to do the physical aspects of the job, such as assembling computer equipment and laying the necessary wiring for systems. Outside of the associate degree in information systems technology, Lorenzetti has a basic high school education. Given Lorenzetti's serious health problems, age, jobs skills, and education, the court finds that his inability to pay the student loans is likely to persist for a significant portion of the repayment period.

Lastly, the court must consider whether Lorenzetti has made good faith efforts to repay the loans. When analyzing this third factor, the court must again consider the debtor's efforts to obtain suitable employment, to maximize his income, and to minimize his expenses. Perkins, 318 B.R. at 311. The record supports that, while attending Cape Fear Community College, Lorenzetti made interest payments on his student loans using loan and grant money. After receiving his associate degree, the debtor qualified for a one-year deferment and hoped to find gainful employment during that time that would enable him to repay his loans. Despite his efforts to send out resumes and participate in the interview process, no employer hired him in the area of information systems technology. Moreover, Lorenzettti has been unable to find a suitable job outside of information systems technology that can accommodate his medical impairments. As noted

8

above, Lorenzetti's sole source of income is $832.00 in disability benefits. Despite his frugal lifestyle, Lorenzetti's basic living expenses exceed his income. The court has found a sufficient showing of good faith on the part of the debtor to repay his loans.

## CONCLUSION

Based on the foregoing, the court finds that Lorenzetti has made the requisite showing of undue hardship. Pursuant to 11 U.S.C. § 523(a)(8), the student loan debt owed by Lorenzetti to NCSEAA is discharged.

**So Ordered.**

**Dated: August 25, 2005**

J. Rich Leonard
United States Bankruptcy Judge